HEIDI L. KEEFE (CA Bar No. 178960)
(hkeefe@cooley.com)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

PHILLIP E. MORTON (*pro hac vice*)
(pmorton@cooley.com)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2446
Telephone:  (202) 842-7800
Facsimile:  (202) 842-7899

Attorneys for Defendant
Facebook, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRANSACTION SECURE, LLC, a foreign limited liability company,<br><br>PLAINTIFF,<br><br>V.<br><br>FACEBOOK, INC., a foreign corporation, d/b/a INSTAGRAM,<br><br>DEFENDANT. | Case No.  5:19-CV-04355-EJD<br><br>Judge Edward J. Davila<br><br>**FACEBOOK, INC.'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)**<br><br>Date:     **February 20, 2020**<br>Time:    **9:00 am**<br>Ctrm:    **4** |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ...................................................................................................................... 1
STATEMENT OF RELIEF REQUESTED ....................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES .................................................................... 1
I.   SUMMARY OF ARGUMENT .............................................................................................. 1
II.  STATEMENT OF FACTS ..................................................................................................... 2
III. LEGAL STANDARD ............................................................................................................. 3
IV.  ARGUMENT .......................................................................................................................... 5
     A.   Alice Step 1 – The Claims Are Directed to an Abstract Idea ..................................... 5
     B.   Alice Step 2 – The Claims Recite No Inventive Concept ......................................... 11
     C.   The Remaining Independent and Dependent Claims Add Nothing of
          Patentable Significance ............................................................................................. 13
V.   CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) .............................................................................................. 4

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016) ...................................................................................... 10, 12

*Affinity Labs of Texas, LLC v. DIRECTV*,
   838 F.3d 1253 (Fed. Cir. 2016) ..................................................................................... 3, 5, 9

*Alice Corp. Pty. Ltd. v. CLS Bank Inter.*,
   134 S. Ct. 2347 ................................................................................................................ *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) .............................................................................................. 9

*Apple Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) .................................................................................... 4, 9, 10

*Asghari-Kamrani v. United Services Automobile Ass'n*,
   No. 2:15-cv-478, 2016 WL 3670804 (E.D. Va. July 5, 2016), *aff'd* 732 Fed. Appx.
   542 (Fed. Cir. Sep. 11, 2018) ......................................................................................... *passim*

*Berkheimer v. HP Inc.*,
   890 F.3d 1369 (Fed. Cir. 2018) .............................................................................................. 4

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ................................................................................................................ 3

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ......................................................................................... 4, 10

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
   776 F.3d 1343 (Fed. Cir. 2014) .............................................................................................. 4

*CyberSource Corp. v. Retail Decisions Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ............................................................................................ 13

*DDR Holdings LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ......................................................................................... 3, 9

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   371 F. Supp. 3d 668 (N.D. Cal. 2019) .................................................................................. 4

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ............................................................................................. 6

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) .......................................................................................... 7, 9

*Genetic Techs. Ltd. v. Merial L.L.C.*,
  818 F.3d 1369 (Fed. Cir. 2016) ............................................................................................. 4

*GoDaddy.com LLC v. RPost Comm'cn Ltd.*,
  Case No. CV-14-00126-PHX-JAT, 2016 WL 3165536 (D. Ariz. June 7, 2016) ............... 6, 7, 9, 12

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ................................................................................... 5, 10, 13

*Intellectual Ventures I LLC v. Symantec Corp.*,
  100 F. Supp. 3d 372 (D. Del. 2015) ....................................................................................... 6

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed Cir. 2016) ........................................................................................... 4, 8

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018) ........................................................................................... 10

*OpenTV, Inc. v. Apple Inc.*,
  No. 5:15-cv-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) .................................. 4

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
  696 F. App'x 1014 (Fed. Cir. 2017) .............................................................................. 6, 8, 13

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
  855 F.3d 1322 (Fed. Cir. 2017) ........................................................................................... 11

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ............................................................................................. 4

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ..................................................................................... 6, 11, 12

*In re TLI Comm'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ..................................................................................... 3, 4, 12

*Transaction Secure, LLC v. DeviantArt, Inc.*,
  Case No. 2:19-cv-05836 (C.D. Cal.) ...................................................................................... 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Transaction Secure LLC v. DeviantArt, Inc.*,
  No. 2:19-cv-05836-PSG-RAO (C.D. Cal. July 8, 2019) ............................................................. 2, 3

*Transaction Secure, LLC v. Stripe, Inc.*,
  Case No. 5:19-cv-04052 (N.D. Cal.) ............................................................................................ 3

*Two-Way Media v. Comcast*,
  874 F.3d 1329 ............................................................................................................................ 10

**Statutes**

35 U.S.C. § 101 ................................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 4

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on February 20, 2020 at 9:00 a.m., or as soon thereafter as the motion may be heard, in the courtroom of the Honorable Edward J. Davila, located at Courtroom 4, 5th Floor, United States Courthouse at 280 South 1st Street, San Jose, CA 95113, Defendant Facebook, Inc. ("Facebook") will and hereby does move the Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the claims of U.S. Patent No. 8,738,921 ("'921 patent," ECF No. 1-1) are invalid under 35 U.S.C. § 101. The motion is based upon this Notice, the Memorandum of Points and Authorities and exhibits submitted therewith, the pleadings, all matters of which the Court may take judicial notice, and any other argument or evidence that may be presented in support of this Motion.

Facebook requests that the Court enter judgment that the claims of the '921 patent are invalid under 35 U.S.C. § 101 and applicable precedent.

**STATEMENT OF RELIEF REQUESTED**

Defendant Facebook, Inc. requests that this Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because the claims of U.S. Patent No. 8,738,921 are invalid under 35 U.S.C. § 101. The issue to be decided by this Court is whether the claims of the asserted patent are directed to an abstract idea, and lack an inventive concept, constituting patent-ineligible subject matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   SUMMARY OF ARGUMENT**

The claims of the '921 patent are invalid under Section 101 because they claim nothing more than the abstract idea of using a trusted entity to authenticate a person's identity with a unique code and do not recite any inventive concept. Indeed, the Federal Circuit has already affirmed the subject matter ineligibility of a patent claiming nearly identical subject matter. *See Asghari-Kamrani v. United Services Automobile Ass'n,* No. 2:15-cv-478, 2016 WL 3670804, (E.D. Va. July 5, 2016), *aff'd* 732 Fed. Appx. 542 (Fed. Cir. Sep. 11, 2018).

The claims of the '921 patent are directed to the abstract idea of using a trusted entity to authenticate a person's identity with a unique code, something that bouncers and members of secret clubs have done for years. Critically, the representative claim does not contain any concrete

technological innovation that transforms the abstract idea into a patent-eligible application. Claim 1 merely situates the idea of authenticating a person's identity by confirming a unique code with a trusted entity in a conventional computer environment without explaining "how" to do it. No particular technological problem is addressed or solved, nor is the computer itself improved in any way. On the contrary, the specification explicitly relies upon prior art technologies (e.g., generic computers) and "human operators" or "human delivery systems" to carry out the steps of the claim. The representative claim fails the *Alice* test, and, therefore, Plaintiff's complaint should be dismissed.

## II.   STATEMENT OF FACTS

Plaintiff asserts that Facebook allegedly infringes "at least claim 1" of the '921 patent (Doc. No. 1, Compl. ¶ 21.), which Plaintiff has agreed in a co-pending case is representative of the claims of the '921 patent. *Transaction Secure LLC v. DeviantArt, Inc.*, No. 2:19-cv-05836-PSG-RAO (C.D. Cal. July 8, 2019) (Doc. No. 24 at 3). Claim 1 recites:

> 1.   A method for authenticating a person's identity to a transaction entity using a trusted entity with a secure repository of a person's personal identity information, comprising:
>
> > receiving personal identity information at a trusted entity computer system, the personal identity information being confidentially stored by the trusted entity computer system;
> >
> > in the secure repository, storing a user identifier and a password that are associated with, but do not contain, the personal identity information;
> >
> > at the trusted entity computer system, receiving a request from the person for a unique code, the request including the user identifier and the password, the person's identity having been previously authenticated by the trusted entity computer system;
> >
> > providing the unique code to the person, the unique code comprising a person identifier and a key, wherein the unique code is thereafter transmitted to a transactional entity to identify the person without providing the personal identity information to the transaction entity; and
> >
> > the trusted entity computer system confirming the unique code to the transactional entity to verify the person's identity.

As noted above, Transaction has also filed several other co-pending lawsuits involving the same patents in this District and the Central District of California. As of the date of this brief, at least two other motions to dismiss[1] have been filed asserting that the claims of the '921 patent are invalid for being directed to unpatentable subject matter. *Transaction Secure, LLC v. DeviantArt, Inc.*, Case No. 2:19-cv-05836 (C.D. Cal.) (Doc. No. 24); *Transaction Secure, LLC v. Stripe, Inc.*, Case No. 5:19-cv-04052 (N.D. Cal.) (Doc. No. 20). In the co-pending DeviantArt case, Transaction indicated there were no claim construction issues that would preclude resolving the 101 issues at the pleading stage. *Transaction Secure, LLC v. DeviantArt, Inc.*, Case No. 2:19-cv-05836 (C.D. Cal.) (Doc. No. 24 at 3).

### III.  LEGAL STANDARD

Patent eligibility under 35 U.S.C. § 101 is a threshold issue of law. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). In *Alice*, the Supreme Court set forth the now-familiar two-step test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Inter.*, 134 S. Ct. 2347, 2355. At step one, the Court must determine if the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. *Id.* At the first step of the *Alice* inquiry, the court looks at the "focus of the claimed advance over the prior art" and the claims' overall "character as a whole." *Affinity Labs of Texas, LLC v. DIRECTV*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). Claims directed to a "fundamental economic practice" or "conventional business practices" that are "prevalent in our system of commerce" are directed to abstract ideas. *Alice*, 134 S. Ct. at 2356; *see also DDR Holdings LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (holding same).

For computer-related claims, the Federal Circuit has provided guidance on how district courts should evaluate whether the claimed invention is directed to an abstract idea. A "relevant inquiry at step one is to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed.

---

[1] Transaction responded to the *DeviantArt* and *Stripe* motions to dismiss by filing Amended Complaints, presumably to add allegations addressing subject matter eligibility. *Transaction Secure, LLC v. DeviantArt, Inc.*, Case No. 2:19-cv-05836 (C.D. Cal.) (Doc. No. 31) *Transaction Secure, LLC v. Stripe, Inc.*, Case No. 5:19-cv-04052 (N.D. Cal.) (Doc No. 24). However, Transaction's attorney argument is insufficient to remedy the ineligibility of the claims of the '921 patent.

Cir. 2016) (internal quotation marks and citation omitted). The Step 1 analysis therefore examines "whether the claims focus on a specific means or method that improves the relevant technology," which may pass muster under Section 101, or are "directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery," which indicates that the claims are directed to an abstract idea. *Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (internal quotation marks and citation omitted). While the Section 101 analysis must be focused on the language of the claims, the "directed to" inquiry "may also involve looking to the specification to understand 'the problem facing the inventor' and ultimately, what the patent describes as the invention." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (*quoting In re TLI Commc'ns*, 823 F.3d at 612).

If the Court determines that the claims are directed to an abstract idea, then at step two it must "determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotations and citation removed); *see also OpenTV, Inc. v. Apple Inc.*, No. 5:15-cv-02008-EJD, 2016 WL 344845, at *6 (N.D. Cal. Jan. 28, 2016) (holding that to survive *Alice* step two "requires more than just the recitation of the abstract idea followed by the words 'apply it' or a generic computer's implementation of routine and well-understood business practices"). If patent claims simply recite using computers, without "improv[ing] or "chang[ing] the way a computer functions," those claims are patent-ineligible. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1321 (Fed Cir. 2016).

Patent eligibility is ripe for determination on a motion to dismiss. *See Berkheimer v. HP Inc.*, 890 F.3d 1369, 1378 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("We have held that patent eligibility can be determined at the Rule 12(b)(6) stage."); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). If there are no genuine disputes as to the material facts, a Court may properly dismiss an action based on patent-ineligibility under Section 101. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 371 F. Supp. 3d 668, 679 (N.D. Cal. 2019). Moreover, it is appropriate to determine patent-eligibility, when as here, no claim construction disputes have been identified. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016)); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161,

1166 (Fed. Cir. 2018).

IV. **ARGUMENT**

   A. *Alice* **Step 1 – The Claims Are Directed to an Abstract Idea**

   1. **The Claims Are Directed to the Abstract Idea of Using A Trusted Entity to Authenticate a Person's Identity With A Unique Code.**

"Stripped of excess verbiage," representative claim 1 is directed to the abstract idea of using a trusted entity to authenticate a person's identity with a unique code. *DIRECTV, LLC*, 838 F.3d at 1257; *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339 (Fed. Cir. 2017). Claim 1 merely claims providing personal identity information to a trusted entity, the trusted entity storing that identity information with a user name and password, the trusted entity providing a unique code, and using that unique code to verify a person's identity.

The abstract idea mirrors processes for authenticating and verifying a person's identity that humans have long done in everyday life. For example, the abstract nature of the '921 patent can be understood by considering the case of a secret club member providing a password to access the club.

| **Representative Claim 1** | **Application of Abstract Idea** |
|---|---|
| A method for authenticating a person's identity to a transaction entity using a trusted entity with a secure repository of a person's personal identity information, comprising: | John Smith is a member of a secret club. To access the secret club, the member must provide a unique code to the bouncer before entering. |
| receiving personal identity information at a trusted entity computer system, the personal identity information being confidentially stored by the trusted entity computer system; | To become a member of the secret club, John Smith registered his personal identity with the membership department of the secret club. The secret club stores that information in the membership book kept in a safe. |
| in the secure repository, storing a user identifier and a password that are associated with, but do not contain, the personal identity information; | The membership book also lists John Smith's user identifier (JS555) and password (clublife0816), which he uses to request secret codes to provide to the secret club's bouncer. |
| at the trusted entity computer system, receiving a request from the person for a unique code, the request including the user identifier and the password, the person's identity having been previously authenticated by the trusted entity computer system; | John Smith calls the secret club's membership department and provides his user identifier and password. |

| Representative Claim 1 | Application of Abstract Idea |
|---|---|
| providing the unique code to the person, the unique code comprising a person identifier and a key, wherein the unique code is thereafter transmitted to a transactional entity to identify the person without providing the personal identity information to the transaction entity; and | The membership department provides John Smith with a secret, unique code 00112JKTA that John Smith can use to gain access to the club. The unique code contains a person identifier (00112) and a key (JKTA). Each time John Smith requests a new unique code, the code changes so that it cannot be used twice. |
| the trusted entity computer system confirming the unique code to the transactional entity to verify the person's identity. | John Smith provides the secret, unique code 00112JKTA to the bouncer at the front door of the secret club. The bouncer calls the membership department to verify that the code 00112JKTA is associated with John Smith and can enter the club. The membership department confirms the unique code to the bouncer to allow John Smith to enter the secret club. |

The claims here fall into the "familiar class of claims" for "collecting information, analyzing it, and displaying certain results of the collection and analysis" that the Federal Circuit has repeatedly found to be abstract. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). The claims here are also abstract like claims found unpatentable that were directed to verifying or authenticating information. *See Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 907, 912 (Fed. Cir. 2017) (finding claims directed to a "method for verifying the authenticity of a mail object" using a unique identifier as abstract); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017-18 (Fed. Cir. 2017) (holding as abstract claims directed to controlling access to resources "by authenticating identity data"); *GoDaddy.com LLC v. RPost Comm'cn Ltd.*, Case No. CV-14-00126-PHX-JAT, 2016 WL 3165536, *7, *13 (D. Ariz. June 7, 2016) (concluding that a "method of authenticating" information with no particular improvement in computer functionality is a patent-ineligible concept). Similarly, claims directed to receiving information, characterizing that information based on certain identifiers, and then communicating that characterization back. *Intellectual Ventures I LLC v. Symantec Corp.*, 100 F. Supp. 3d 372, 383 (D. Del. 2015). Applying these principles in the wake of *Alice*, the Federal Circuit consistently holds invalid claims such as these that recite only the use of a generic computer for authenticating a person's identity.

**2.   The Claims Are Comparable to Claims Held Ineligible Under § 101**

1    The Federal Circuit has instructed courts to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The claims of the '921 patent are remarkably similar to the claims at-issue in the *Asghari-Kamrani* case. Similar to the stated goal of preventing identity theft in the '921 patent, the asserted patent in *Asghari-Kamrani v. United Services Auto. Association* related to "a system and method provided by a Central-Entity for centralized identification and authentication of users and their transactions to increase security in e-commerce." Case No. 2:15-cv-478, 2016 WL 3670804, *1 (E.D. Va. July 5, 2016), *affirmed by Asghari-Kamrani*, 737 F. App'x 542 (Fed. Cir. 2018), (citing U.S. Patent 8,266,432 (the "'432 patent") at 2:52-55). The asserted patent identified three entities, analogous to the entities identified in the '921 patent: (1) a central entity (aka "trusted entity"); (2) a user (aka "person"); and (3) an external entity (aka "transactional entity"). *Compare* '432 patent, 2:56 – 3:6 *with* '921 patent, claim 1. The user provides the central entity with "personal or financial information" and the central entity provides the user with a secure code that is given to the external entity to authenticate the user's identity. ('432 patent, 3:7-26; *cf.* '921 patent, claim 1 (describing how the person provides the trusted entity with "personal identity information" and the trusted entity provides a "unique code" that is used by the transactional entity to authenticate the person's identity).)

Like the claims here, although the claims of the '432 patent required the use of a computer, the *Asghari-Kamrani* court concluded that "the patent claims are directed to a common method for solving an old problem" of "confirm[ing] the identity of a participant to a transaction." 2016 WL 3670804, at *4. The representative claim fails Step 1 because, similar to the claims in *Asghari-Kamrani*, they "are directed to the abstract idea of using a third party and . . . code to confirm the identity of a participant to a transaction." *Id.* As the *Asghari-Kamrani* court noted, nothing in the representative claim limitations "depends upon their implementation by computers." *Id.* at *4; *see also GoDaddy.com*, 2016 WL 3165536, at *10 (the claims "are not directed to a specific improvement in computer functionality but simply recite conventional and generic technology to perform 'generalized steps' in a well-known computer environment").

Similarly, the court in *Prism Technologies* held invalid patent claims directed to

1  "authenticating identity data." 696 F. App'x at 1016, 1018. The Court noted that these claims merely
2  performed the steps of (1) "receiving identity data," (2) "confirming the authenticity of the identity
3  data," (3) "determining whether the device identified is authorized to access the resources requests,"
4  and (4) "permitting access to the resources." *Id.* at 1017. The court concluded that these steps were
5  merely directed to "control[ling] access to protected computer resources by authenticating identity
6  data." *Id.* at 1016. Likewise, the representative claim here recites (1) "receiving personal identity"
7  data and storing it, (2) "confirm[ing]" the personal identity data when requested, (3) determining that
8  the personal identity data corresponds to a unique code, and (4) authenticating the person's identity,
9  thereby allowing the person to proceed in a transaction with a third party. ('921 patent, claim 1.) The
10 representative claim of the '921 patent is, therefore, equally abstract.

11     The abstractness of the claims is further confirmed by the fact that, "with the exception of
12 generic computer-implemented steps, there is nothing in the claims themselves that foreclose them
13 from being performed by a human, mentally or with pen and paper." *Symantec Corp.*, 838 F.3d at
14 1318; *see also Asghari-Kamrani*, 2016 WL 3670804, at *4 ("Nothing about the concept behind the
15 patent claims depends upon their implementation by computers."). The *Asghari-Kamrani* court
16 likened the asserted claims to the claims at-issue in *Alice* which involved "a computerized scheme for
17 mitigating settlement risk" which "could and had been performed without computers." 2016 WL
18 3670804, at *4 (internal quotation marks omitted). "The fact that the patent claims used a computer
19 to perform part of this method was of no consequence." *Id.*

20     A human can perform each and every step of representative claim 1 of the '921 patent using
21 the ultimate computer, the brain: a human can receive personal information, store the information in
22 memory or on paper, provide a unique code, and confirm that unique code to another entity. Moreover,
23 the specification of the '921 patent fully acknowledges that the claims can be performed by humans
24 and recites several real-world examples that don't involve the use of computers. *See, e.g.,*, '921 patent,
25 at 8:63 – 9:1 ("person's identity authentication or rejection 238 may be delivered using a computer
26 network . . . or human delivery systems"); *id.*at 8:25-29 ("unique code . . . can be delivered using a
27 computer network . . . or human delivery systems"); *id.* 8:6-11 ("trusted entity's system can use a
28 secure repository, . . . human operators or a combination thereof"); *id.* 7:7-11 ("person user interface

can comprise a web page, computer terminal, computer display, automated telephone system, telephone operator, or representative employed by the trusted entity"). Thus, the claims are "not even limited to an electronic embodiment" and "[t]he only language plausibly requiring electronic implementation" is storage of personal information by the "trusted entity computer system." *GoDaddy.com*, 2016 WL 3165536, at *10; '921 patent, claim 1.

The claims are clearly distinguishable from the few patents the Federal Circuit has held are not directed to abstract ideas. The claims in *Enfish* and *Amdocs*, for example, were "directed to a specific improvement to the way computers operate," *Enfish, LLC*, 822 F.3d at 1336, and provided a "technological solution . . . to a technological problem" to "achieve an improvement in computer functionality." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016). Similarly, the claims in *DDR Holdings* recited a system that presented "a composite web page to the visitor's computer having the 'look and feel' of the host web page" to solve a problem "particular to the Internet" with a solution "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DIRECTV*, 838 F.3d at 1261, citing *DDR Holdings, LLC*, 773 F.3d 1245.

By contrast, here the claimed invention "is not directed to the solution of a 'technological problem,' nor is it directed to an improvement in computer or network functionality," as explained previously. *DIRECTV*, 838 F.3d at 1262.

### 3. The Claims Do Not Focus on Improving Technology

The claims fall outside the category of patent-eligible claims described in *Ameranth*, namely claims that focus on a "specific means or method that improves the relevant technology." 842 F.3d at 1241. Instead, the representative claim attempts to solve the problem of "identity theft" relating to business transactions. ('921 patent, 1:16 – 2:29.) Other than one limitation ("trusted entity computer system"), representative claim 1 does not even recite the use of a computer or network environment.

The claims do not recite any specific improvement to any technology, such as by making a computer more efficient, transmitting information in an improved way or databases with more storage capacity and improved security. Instead, the claims recite obtaining high-level functional results (*e.g.*, receiving personal identity information, storing personal identity information with a user name and

password, providing unique codes and confirming those unique codes to verify a person's identity. and doing so using generic computer components (*e.g.*, "computer system," "secure repository") and equally generic computer processes (*e.g.*, "receiving personal identity information," "storing a user identifier," "providing the unique code to the person," and "confirming the unique code."). ('921 patent, claim 1.)  Indeed, by the patent's own admission, the "trusted entity's system" can be virtually anything, including "a secure repository, database, server, website, computer network, telephone network, human operators or combination thereof." (*Id.*, 6:67-7:5).

Further, nothing in the claims meaningfully specifies *how* the personal identity information is received or stored, *how* the unique code is generated or *how* the unique code is verified in a non-abstract way. *Two-Way Media v. Comcast*, 874 F.3d 1329, 1337. (finding claims directed to routing information abstract because they "[did] not sufficiently describe *how* to achieve these results in a non-abstract way") (emphasis added).  The claims are devoid of details on "*how* to engineer or program" the underlying components and recite only "result-based" functional aspirations. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343-45 (Fed. Cir. 2018) (italics in original); *see also*, *e.g.*, *Capital One Fin.*, 850 F.3d at 1342 ("the claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it."); *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("*Affinity Labs II*") ("The purely functional nature of the claim confirms that it is directed to an abstract idea . . ."). The claims do little more than identify desired functional results and say "do it on a computer." *Ameranth*, 842 F.3d at 1243.

The specification confirms that the claimed invention is directed to an abstract idea. *See ChargePoint, Inc.*, 920 F.3d at 767 ("[w]hile '[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves,'" the specification may be useful "to understand 'the problem facing the inventor' and, ultimately, what the patent describes as the invention.") (internal citations omitted). Here, the alleged "problem" to be addressed is nothing more than identity theft.  ('921 patent, 1:16-17 ("The present invention relates generally to protecting sensitive information from identity theft.").) This problem is not technological.  Rather, the patent acknowledges that there are various times when "authenticating a person's identity to a business" is necessary in generic business transactions.  ('921 patent, 2:33-34.)

Indeed, the inventor embraced the abstract nature of the alleged invention by repeatedly describing it as being applicable to virtually any means of verifying the identity of persons, whether it be using computers, using telephones, using the postal mail, or using humans. (*e.g.*, '921 patent, 6:67–7:3 ("The trusted entity's system can use a secure repository, database, server, website, computer network, telephone network, *human operators* or combination thereof.") (emphasis added); *id.* at 7:6–11 ("The person user interface can comprise a . . . *telephone operator, or representative employed by the trusted entity 220.*") (emphasis added); *id.* at 8:19–22 ("The key, person identifier, or unique code can be displayed on a computer terminal, web page, or *printed on a certificate to be given to the transaction entity*.") (emphasis added); *id.* at 8:25–29 ("The unique code . . . can be *delivered using . . . mail, . . . mechanical delivery systems, physical delivery systems, or human delivery systems*.") (emphasis added); *id.* at 8:35–40 ("In one embodiment, the transactional entity 240 accesses the trusted entity's system using a transactional entity user interface 236. The transactional entity user interface can be a . . . *telephone operator, or representative employed by the trusted entity*.") (emphasis added); *id.* at 8:63–9:1 ("The person's identity authentication or rejection 238 may be delivered using a computer network, telephone network, *mail,* email, *mechanical delivery systems, physical delivery systems, human delivery systems*, or mechanism used to deliver the unique code.") (emphasis added).) Nowhere in the specification does the patent claim to solve or improve a technological issue; instead, it focuses on resolving a generic business or transactional problem, which is not patent-eligible.

### B.   *Alice* Step 2 – The Claims Recite No Inventive Concept

"To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).  Elements that are "well-understood, routine, conventional," or "purely functional" cannot "transform" an abstract idea into a patent-eligible application of the idea. *Alice*, 134 S. Ct. at 2359-60 (citation omitted).

The '921 patent claims do not contain any inventive concept to save it from invalidity under Section 101. As discussed previously, the representative claim does not provide any concrete new technology and only relates to "conventional business practices" that are "prevalent in our system of commerce." *Alice*, 134 S. Ct. at 2356. Only one limitation of the representative claim recites a computer and even that limitation can be performed by any generic computer system. ('921 patent,

claim 1); *see also Secured Mail*, 873 F.3d at 911 ("Merely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention."). The requirement of a "secured repository," which according to the specification could be any "physical facility," to store information also does not add an inventive concept. ('921 patent, 4:47-61); *see also In re TLI*, 823 F.3d at 613 (claim elements which perform generic computer functions such as storing data remain abstract under *Alice* step two). The claims are merely a "[w]holly generic computer implementation" that cannot confer patent-eligibility. *Alice*, 134 S. Ct. at 2360.

The claims also fail to specify *how* the claimed methods and systems are supposed to store information, provide a unique code, and confirm that code, such as by using specific software algorithms with reference to concrete data fields and objects. The claims essentially state only an open-ended, aspirational functional goal that, somehow, through some unspecified underlying technical details, various information is to be received, stored, provided, and confirmed. "At that level of generality, the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity II*, 838 F.3d at 1269. Like the claims held invalid in *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, the representative claim's reliance on "an identifier . . . to make a process more efficient" cannot "render an abstract idea less abstract." 873 F.3d at 910. Like the asserted claims in *Secured Mail*, claim 1 of the '921 patent does not explain "how the unique identifier is generated." 873 F.3d at 910 *see also id.* ("The claim language does not explain how the sender generates the information, only that the information itself is unique or new. The claim language does not provide any specific showing of what is inventive about the identifier or about the technology used to generate and process it.").

Considering the claims as an "ordered combination" of elements also does not transform the idea into a concrete, patent-eligible invention. *Alice*, 134 S. Ct. at 2359-60. The claims "simply instruct[s] a generic computer or computers to verify the identity of a participant to a transaction using a randomly generated code. They do not purport to improve the functioning of the computer itself." *Asghari-Kamrani*, 2016 WL 3670804, at *5 (internal quotation marks omitted); *see also GoDaddy.com*, 2016 WL 3165536, at *12 (holding that an ordered combination of "collecting and

providing information" and using an "authenticator," without more, cannot transform the abstract idea into a patentable invention). The representative claim recites generic information-moving and processing functions in the same conventional, common-sense order that humans do in everyday life: "receiving" information, "storing" the information, "providing" information, and "confirming" the information stored. *See Asghari-Kamrani*, 2016 WL 3670804, at \*5 (noting that the individual claim elements of "receiving," "generating," "providing, and "authenticating" only involve "generic computers perform[ing] an old method of authentication"); *see also CyberSource Corp. v. Retail Decisions Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("[C]omputational methods which can be performed entirely in the human mind" are not patent-eligible). Whether "taken individually or in combination, the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept." *Capital One Fin.*, 850 F.3d at 1342; *see also Prism Techs.*, 696 F. App'x at 1018 ("Viewed as an ordered combination, the asserted claims recite no more than the sort of 'perfectly conventional' generic computer components employed in a customary manner that we have previously held insufficient to transform the abstract idea into a patent-eligible invention"). Thus, the claims of the '921 patent fail *Alice* step 2.

### C. The Remaining Independent and Dependent Claims Add Nothing of Patentable Significance

While Transaction has already agreed that claim 1 is representative in a co-pending proceeding, the remaining claims in the '921 patent are directed to the same abstract idea. The other independent claims recite similar methods and systems for authenticating and verifying a person's identity. Independent claims 2 and 24 merely add displaying a photograph as a secondary mechanism to authenticate, presumably to a human. Independent claim 20 adds using "single use keys" for the unique code.

Turning to the dependent claims add trivial limitations that do not alter the nature of the abstract idea to which the claims are directed. The dependent claims from claim 1 recite only minor additions such as: (1) the characteristics of the user or person identifier (claims 4 and 5); (2) when information is recorded and stored (claims 6 and 7); (3) responding to inquiries to provide the unique code (claim

8); (4) using other trusted entities (claim 10); (5) verifying the unique code with certain systems (claim 13 and 15); and (6) using a specific unique code for a specific transactional entity (claim 17). The dependent claims off claims 2 and 20 have similar, trivial limitations. Thus, like the independent claims, the dependent claims recite only generalized, result-oriented ideas for authenticating and verifying a person's identity. They do not purport to disclose any specific improvement in technology, such as the details of an unconventional way to identify a person.

## V.   CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court grant its motion, dismiss this action, and hold that the '921 patent is invalid under Section 101.

Dated: October 4, 2019                           Respectfully submitted,

*/s/ Heidi L. Keefe*
HEIDI L. KEEFE (CA Bar No. 178960)
hkeefe@cooley.com
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

PHILLIP E. MORTON
pmorton@cooley.com (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2446
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

*Counsel for Defendant Facebook, Inc.*